# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* H. M. HOSKINS, Minor.

UNPUBLISHED
December 7, 2017

No. 338589
Wayne Circuit Court
Family Division
LC No. 11-503688-NA

Before: GLEICHER, P.J., and GADOLA and O'BRIEN, JJ.

PER CURIAM.

The circuit court terminated respondent-mother's parental rights to her three-year-old daughter, HMH, based on respondent's extensive history of abusing marijuana in an unsuccessful attempt to control her bipolar disorder, as well as the prior termination of respondent's parental rights to three other children. We affirm.

## I. BACKGROUND

Respondent has five children under the age of nine. The Department of Health and Human Services (DHHS) removed the eldest two, JH and DH, from respondent's care in 2011. Respondent had been diagnosed with bipolar disorder. However, she refused to take prescribed medications and instead relied upon marijuana. As a result, respondent was "always high" and could not tend to her young children's needs. On more than one occasion, respondent abandoned her children for several days with her roommate or her mother. The DHHS repeatedly offered respondent rehabilitative services, but respondent never followed through. The Wayne Circuit Court terminated respondent's parental rights to JH and DH in May 2013.

HMH was born September 13, 2013. To prevent the DHHS from taking the infant into care, respondent petitioned the Oakland Probate Court to name her mother as HMH's guardian. HMH remained in the care of guardians until the age of three, bouncing between the homes of her grandmother and respondent's ex-girlfriend. During this time, respondent failed to visit HMH for 18 months.

In the summer of 2015, respondent gave birth to her fourth child, KH. Respondent tested positive for marijuana at the time of delivery. The DHHS took KH immediately into care. Respondent chose that time to reappear in HMH's life, disrupting her guardianship with respondent's ex-girlfriend and returning HMH to her grandmother's care. The Wayne Circuit Court thereafter terminated respondent's parental rights to KH without providing services.

-1-

In September 2016, respondent gave birth to her fifth child, HH. The DHHS took HH into custody and initiated a child protective proceeding in Oakland County. The DHHS offered respondent parenting classes, therapy, and drug screens.

While the Oakland County case was pending, respondent engaged in a physical altercation with her mother. Her mother withdrew as guardian and ceded care of HMH to the DHHS. The DHHS filed a petition seeking termination of respondent's parental rights in Wayne Circuit Court. The DHHS cited respondent's prior terminations and failure to follow through with services, as well as her current failure to comply with services in the Oakland County matter.

Respondent pleaded to grounds for the court to take jurisdiction over HMH. She also pleaded to a statutory ground for termination of her parental rights—MCL 712A.19b(3)(i). The circuit court adjourned the hearing to determine whether termination of respondent's parental rights would be in HMH's best interests, however, so it could gather additional information regarding respondent's progress in the Oakland County matter. The court also ordered respondent to submit to a Clinic for Child Study evaluation.

On April 26, 2017, the court reconvened to consider the fate of respondent's parental rights. Respondent admitted that she had stormed out of the clinic without submitting to an evaluation. She also had not begun complying with her Oakland County services plan until that month. Prior to April, respondent had tested positive for marijuana 20 times. Respondent did not claim to have stopped using the drug thereafter. However, since April 1, respondent had attended two therapy sessions and started taking her prescribed psychotropic medication. Even so, respondent testified that marijuana worked better to relieve her symptoms. The foster care worker who supervised respondent's visits with HMH also took the stand at the termination hearing. She described that respondent had a limited bond with the child, inappropriately disciplined her, and became fixated on irrelevant issues, impeding her parenting time sessions.

Ultimately, the circuit court found that termination of respondent's parental rights was in HMH's best interests. Respondent appeals.

## II. STATUTORY FACTORS

Respondent first challenges various factors under MCL 712A.19b(3) cited by the circuit court when terminating respondent's parental rights. However, respondent pleaded to a statutory ground to support termination of her parental rights—MCL 712A.19b(3)(i). Even on appeal, respondent admits that termination was supported under this ground. Accordingly, respondent has waived any allegation of error. See *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011)

In any event, termination was factually supported under factor (i). Pursuant to MCL 712A.19b(3), a circuit court "may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence" that at least one statutory ground has been proven by the DHHS. MCR 3.977(A)(3); *In re Trejo*, 462 Mich 341, 350; 612 NW2d 407 (2000). The court may terminate a parent's rights at the initial disposition if jurisdiction is supported by a preponderance of the evidence and the DHHS presents legally admissible evidence supporting

the termination ground. MCL 712A.2(b); MCR 3.977(E). We review a circuit court's factual finding that a statutory termination ground has been established for clear error. *In re Rood*, 483 Mich 73, 90-91; 763 NW2d 587 (2009). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (quotation marks and citation omitted). "Clear error signifies a decision that strikes us as more than just maybe or probably wrong." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009).

Clear and convincing evidence supported the termination of respondent's parental rights to HMH under MCL 712A.19b(3)(i), which provides: "Parental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect or physical or sexual abuse, and prior attempts to rehabilitate the parents have been unsuccessful."

As respondent concedes, her parental rights to three other children were previously terminated. The record supports that respondent neglected her eldest two children—JH and DH—by abusing marijuana to the point she was "always high" and failing to treat her bipolar disorder. This left respondent in a condition where she was unable to tend to her very young children's needs. Respondent also neglected the children by abandoning them on more than one occasion with her roommate and with her mother.

Termination under factor (i) "also requires that prior attempts at rehabilitation have proved unsuccessful." *In re Gach*, 315 Mich App 83, 94; 889 NW2d 707 (2016). In the supplemental petition seeking termination of respondent's rights to JH and DH, the DHHS described that it offered several services to respondent between October 19, 2011 and March 21, 2013. During that time, respondent visited the children eight times and submitted to only one drug screen. The DHHS had referred and repeatedly re-referred respondent for psychotherapy, parenting classes, and a psychological evaluation but respondent failed to follow through. The DHHS did not provide services in KH's child protective proceeding. In any event, the evidence from the hearings pertaining to JH and DH supports that a prior attempt at rehabilitation was unsuccessful, supporting termination under factor (i). Respondent pleaded to a statutory termination ground and the circuit court properly accepted that plea given the record facts.

At the best-interest hearing, the circuit court sua sponte identified other statutory grounds supporting the termination decision. As only one statutory ground in required to support termination, MCL 712A.19b(3), respondent's challenges to the additional cited grounds are futile.

### III. BEST INTERESTS

Respondent also challenges the circuit court's determination that termination of her parental rights was in HMH's best interests. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012), citing MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence." *Moss*, 301 Mich App at 90. The lower court should weigh all the evidence available to it in determining the child's best interests.

*Trejo*, 462 Mich at 356-357. Relevant factors include "the child's bond to the parent, the parent's parenting ability, [and] the child's need for permanency, stability, and finality. . . ." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider . . . the parent's compliance with his or her case service plan, the parent's visitation history with the child, [and] the children's well-being while in care. . . ." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). The parent's history of mental health issues is a proper consideration. *In re AH*, 245 Mich App 77, 89; 627 NW2d 33 (2001). Also relevant are the advantages of the child's foster placement over placement with the parent, *In re Foster*, 285 Mich App 630, 634-635; 776 NW2d 415 (2009), and the length of time the child has been in care, *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 64; 874 NW2d 205 (2015). "With respect to the trial court's best-interests determination, we place our focus on the child rather than the parent." *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016), citing *Moss*, 301 Mich App at 87.

The circuit court weighed the evidence and properly determined that it preponderated in favor of termination. Respondent bounced HMH between guardians from birth until the age of three. HMH has never been in respondent's care. Respondent did not share a deep bond with her child. HMH referred to respondent as "Ke Ke" and respondent's ex-girlfriend, the woman who raised her for 18 months, as "mom."

Although respondent had regularly attended parenting time, visits did not go well. The foster care worker testified that respondent did not know how to control HMH's bad behaviors. Respondent threatened to "whup" the child and to leave visits early. Respondent over-reacted about small scratches and bruises on HMH and would undress the child to inspect her and to redress her in clothing that respondent brought. Respondent made derogatory comments regarding the foster parents in front of HMH as well. Respondent did not perceive her visits the same way. She claimed that she and HMH were "playing" when respondent teased her about leaving the visit. Respondent further insisted that HMH was dirty, smelly, and dry-skinned at visits, requiring her inspection and attention. The caseworker did not corroborate respondent's beliefs.

Contrary to respondent's concerns, HMH had done very well in her foster placement. HMH demonstrated behaviors consistent with a lack of parenting in the past. She threw temper tantrums and was physically aggressive toward others. HMH did not respond well to discipline or attempts at redirection. The foster parents actively worked with HMH to overcome these bad habits. However, some of HMH's bad behaviors had "triggers" suggesting some sort of trauma. For example, HMH threw a temper tantrum when she saw a belt on the floor because she thought she was going to get hit. The foster parents were also working with HMH to overcome her fears.

And respondent's history and current condition supported termination. Respondent has suffered from bipolar disorder since she was 15 years old. Yet, respondent only started taking prescribed psychotropic medication three weeks before the best-interest hearing. Previously, respondent used marijuana to control her condition. Even at the hearing, respondent indicated that marijuana worked best to keep her condition under control. The record demonstrates that this was not the case as respondent had been unable to care for any of her five children while following that regimen. Given respondent's brief period of trying to control her bipolar disorder as prescribed—with prescription medication and therapy—respondent's chances of progress

could not be predicted.  Given this evidence, we discern no ground to interfere with the court's termination decision.

       We affirm.

                              /s/ Elizabeth L. Gleicher
                              /s/ Michael F. Gadola
                              /s/ Colleen A. O'Brien